UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____x
SAWSAAN TABBAA, HASSAN SHIBLY, :
ASMAA ELSHINAWY, KAREMA ATASSI, :
and GALEB RIZEK, :
 :
 Plaintiffs, :
 : Case No. 1:05-CV-582(S)
 -versus- :
 :
MICHAEL CHERTOFF, Secretary of the United :
States Department of Homeland Security; :
ROBERT C. BONNER, Commissioner of the :
United States Customs and Border Protection; :
MICHAEL D'AMBROSIO, Director of Field :
Operations in Buffalo, United States Customs and :
Border Protection; and JOSEPH J. WILSON, :
Buffalo Port Director for the United States Customs :
and Border Protection, :
 :
 Defendants. :
_____x

# PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION
 FOUNDATION, by

CHRISTOPHER DUNN
COREY STOUGHTON
UDI OFER
ARTHUR EISENBERG
125 Broad Street, 17th Floor
New York, N.Y. 10004
(212) 344-3005

CATHERINE KIM
American Civil Liberties Union Foundation
125 Broad Street, 17th Floor
New York, N.Y. 10004
(212) 549-2500

ARSALAN IFTIKHAR
KHURRUM WAHID
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, D.C. 20003
(202) 488-8787

MICHAEL WISHNIE
245 Sullivan Street, 5th Floor
New York, N.Y. 10012
(212) 988-6430
NYCLU Cooperating Attorney

DAVID JAY
69 Delaware Avenue
Suite 1103
Buffalo, N.Y. 14202
(716) 856-6300

Dated: December 13, 2005
      New York, N.Y.


On the brief:   Daniel Freeman, Law student intern
                Murad Hussain, Law student intern
                Rizwan Sabar, Law student intern
                Allard K. Lowenstein International Human Rights Clinic,
                   National Litigation Project, Yale Law School

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     I.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR
           FIRST AMENDMENT CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     II.   PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR
           RELIGION CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     III.  PLAINTIFFS WILL LIKELY PREVAIL ON THEIR
           FOURTH AMENDMENT CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     IV.  PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR APA CLAIM . . . . . . . . 8

     V.   THE NARROW INJUNCTION SOUGHT BY PLAINTIFFS
           WILL NOT IMPERIL NATIONAL SECURITY . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

CASES

*Aptheker v. Sec. of State*, 378 U.S. 500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bradley v. United States*, 299 F.3d 197 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Davis v. Mississippi*, 394 U.S. 721 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*DeJonge v. Oregon*, 299 U.S. 353 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fifth Ave. Presbyterian Church of New York v. City of New York*,
    293 F.3d 570 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hayes v. Florida*, 470 U.S. 811 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lamont v. Postmaster Gen.*, 381 U.S. 301 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Latino Officers' Ass'n v. Safir*, 196 F.3d 458 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Teague v. Regional Commn'r of Customs*, 404 F.2d 441 (2d Cir. 1968) . . . . . . . . . . . . . . . 3, 4

*United States v. Charleus*, 871 F.2d 265 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Flores-Montano*, 541 U.S. 149 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Flores-Sandoval*, 422 F.3d 711 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Jerome-Oboh*, 883. F. Supp.917 (W.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . 7

*United States v. Kaczmarak*, 2003 WL 1890022 (4th Cir. Apr. 17, 2003) . . . . . . . . . . . . . . . . 7

*United States v. Montoya de Hernandez*, 473 U.S. 531 (1985) . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. O'Brien*, 391 U.S. 367 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Ramsey*, 431 U.S. 606 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Robel*, 389 U.S. 258 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Soto-Teran*, 44 F. Supp.2d 185 (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Vega-Barvo*, 729 F.2d 1341 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATUTES AND REGULATIONS

Administrative Procedure Act, 5 U.S.C. § 551 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

6 U.S.C. § 111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6 U.S.C. § 202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8 U.S.C. § 1225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8 U.S.C. § 1357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19 U.S.C. § 482 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19 U.S.C. § 1455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19 U.S.C. § 1461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19 U.S.C. § 1467 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19 U.S.C. § 1499 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19 U.S.C. § 1559 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19 U.S.C. § 1581 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19 U.S.C. § 1582 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19 U.S.C. § 1589a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Religious Freedom Restoration Act, 42 U.S.C. § 2000bb(b)(1) . . . . . . . . . . . . . . . . . . . . . . . 4, 5

8 C.F.R. § 235.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

N.Y. Crim. Pro. Law § 140.30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

PRELIMINARY STATEMENT

In opposing plaintiffs' motion for a narrow preliminary injunction, the government contends that the treatment of plaintiffs was so inconsequential as not to pose a constitutionally significant burden on their First Amendment rights; that it may subject any citizen at the border to any search or seizure short of a body cavity or strip search without any suspicion whatsoever; that concerns about national security trump plaintiffs' religious freedom rights; that plaintiffs' claims under the Administrative Procedure Act are "banal"and "specious"; and finally that a preliminary injunction protecting three plaintiffs from being mistreated in the same way when returning from this year's RIS Conference would imperil national security. Each contention is without merit.

I. PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR FIRST AMENDMENT CLAIM.

Starting with plaintiffs' primary claim, the government acknowledges at the outset that its actions are subject to "strict scrutiny": "'[i]nfringements on the [right to associate] may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.'" Defendants' Opposition Memorandum ("Defs.' Mem.") at 15-16 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)). Plaintiffs agree that this standard governs this case.

Plaintiffs likewise agree that terrorism concerns qualify as compelling interests for purposes of this test; their position in this matter has never suggested otherwise. Rather, the question here is the extent to which the government's actions are narrowly tailored to those interests – i.e., the extent to which less restrictive means could address those concerns. And this is the point to which all the Supreme Court cases cited in plaintiffs' preliminary injunction memo speak. *See* Plaintiffs' Preliminary Injunction Memorandum ("Plaintiffs' PI Mem.") at 12-16

(citing and discussing *DeJonge v. Oregon*, 299 U.S. 353 (1937); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982); *United States v. Robel*, 389 U.S. 258 (1967); *Aptheker v. Sec. of State*, 378 U.S. 500 (1964); *Lamont v. Postmaster Gen.*, 381 U.S. 301 (1965)). The central theme of these rulings -- which remain fully in force to this day -- is that legitimate concerns about national security and public safety cannot justify sweeping regimes burdening expressive activity. *See, e.g.*, *Robel*, 389 U.S. at 267-68 ("Spies and saboteurs do exist, and Congress can, of course, prescribe criminal penalties for those who engage in espionage and sabotage. . . . Our decision today simply recognizes that, when legitimate legislative concerns are expressed in a statute which imposes a substantial burden on protected First Amendment activities, Congress must achieve its goal by means which have a less drastic impact on the continued vitality of First Amendment freedoms.") (internal quotation and footnotes omitted).

That is the defect in defendants' scheme, which treats every one of thousands if not tens of thousands of law-abiding people as if they were criminals because they attended a lawful religious conference when the government had reason to believe that people associated with terrorism might attend one of many religious conferences taking place during the same month. Without more, the government's guilt-by-association dragnet violates long-standing Supreme Court law.[1]

The government offers no argument that its policy is the least restrictive means of accomplishing its goals. Instead, it suggests that what happened to plaintiffs does not even implicate the First Amendment, as it had "little impact on their rights to association and free

---

[1]The government's invocation of *United States v. O'Brien*, Defs.' Mem. at 16 n.5, does not affect the analysis. Even in expressive conduct cases, which this is not, the government still must show its actions are "no greater than is essential to the furtherance" of its interest. 391 U.S. 367, 377 (1968).

2

speech" and plaintiffs "were not subject to any similar penalties for their attendance at the RIS Conference." Defs.' Mem. at 19.

With all due respect, this contention borders on the absurd. Plaintiffs undisputedly were processed as terrorists, forcibly detained, interrogated, fingerprinted, and photographed by armed law enforcement personnel. No one for a moment could suggest that if Buffalo-area police officers attempted to detain for similar treatment anyone they could identify as leaving a lawful religious event (say at Wilson Stadium or HSBC Arena) such treatment would not seriously burden First Amendment rights. The Second Circuit has had no trouble striking down lesser burdens. *See, e.g., Latino Officers Ass'n v. Safir*, 196 F.3d 458, 465-66 (2d Cir. 1999) (finding policy barring police officers from wearing NYPD uniform in public parades sufficient to trigger First Amendment).[2]

The sole case the government cites in support of its position is *Teague v. Regional Comm'n'r of Customs*, 404 F.2d 441 (2d Cir. 1968). *See* Defs.' Mem. at 17-18. In *Teague*, the Second Circuit rejected a First Amendment challenge to a federal statutory and regulatory regime by which individual recipients of publications from North Vietnam and other countries were required to fill out certain forms and make payments to "blocked accounts"; the publications were otherwise available as gifts and also were freely available at libraries, universities and research

---

[2]The one difference, of course, is that these actions took place at the border, but that does not affect the analysis. *See Lamont*, 381 U.S. at 305-07 (relying on cases involving domestic First Amendment controversies to invalidate federal restriction on international mail), *discussed in* Plaintiffs' PI Mem. at 16. In a footnote the government suggests that plaintiffs "overreach" in relying on *Lamont* because a concurring opinion argues that the government failed to assert a compelling interest. *See* Defs.' Mem. at 18 n.6. Setting aside the relevance of a concurring opinion, this has nothing to do with the point established by *Lamont*: controversies that implicate border and national security concerns are governed by standard First Amendment case law.

3

facilities. *See id*. at 445-46 & n.5. Given this, the court found that "the infringement of first amendment rights is permissible as incidental to the proper, important, and substantial purpose of the regulations." *Id*. at 446. Setting aside the fact that the court recognized that even the reasonably tailored burdens in *Teague* triggered First Amendment scrutiny, plaintiffs submit that those burdens, which the recipient was able to avoid entirely, hardly compare to being detained, interrogated, fingerprinted, and photographed by armed law enforcement officers.

II. PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR RELIGION CLAIMS.

The government does not seriously dispute that its actions implicate the First Amendment's free exercise clause and RFRA, but argues that it did not substantially burden plaintiffs' religion and that concerns about terrorism are compelling. *See* Defs.' Mem. at 20-21.

This first contention simply echoes the government's First Amendment assembly defense, going farther to assert that its actions "merely delayed the Plaintiffs in their return from the RIS Conference." Defs.' Mem. at 21. As discussed above, this is not a case of "mere delay" and is more than sufficient to trigger freedom of religion rights. *See also* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Dec. 9, 2005) at 21-22.

As for the government's contention that its actions "withstand scrutiny at any level because these border searches advanced interests of the highest order," Defs.' Mem. at 21, this contention does not address plaintiffs' claim. Plaintiffs do not dispute the significance of the interest but rather dispute whether, as required by RFRA, the government's policy is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). The government offers no explanation for how its policy of treating as a terrorist every person who attends a religious conference meets this standard, and plaintiffs therefore are likely to

4

prevail on their RFRA and free exercise claims. *See Jolly v. Coughlin,* 76 F.3d 468, 477-80 (2d Cir. 1996) (in affirming preliminary injunction in RFRA case against prison policy, finding that even if policy furthered compelling interest it was not the least restrictive means of doing so); *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 576 (2d Cir. 2002) (affirming preliminary injunction in a free exercise case and noting that the city failed to show that the challenged policy was "the least restrictive means of accomplishing its goal of ensuring that the homeless have appropriate sleeping quarters").

III. PLAINTIFFS WILL LIKELY PREVAIL ON THEIR FOURTH AMENDMENT CLAIM.

In this case challenging terrorism-related detentions and examinations of U.S. citizens, the government does not even attempt to justify its actions as based on reasonable suspicion. Instead, the government rests entirely on the notion that it may subject citizens to investigation as suspected terrorists – including detention for many hours, interrogation into religious activity and association, and forcible personal search, fingerprinting and photographing – for any reason and without any level of suspicion whatsoever. This is fundamentally inconsistent with the Fourth Amendment. Even at the border, there are constitutional limits on government authority. No case cited by the government supports expanding the category of "routine" suspicionless searches permitted at the border to include the intrusive and unusual measures at issue here.

The government's attempt to cabin the realm of "non-routine" searches to extreme physical invasions is inconsistent with the law and with common sense. The principle that searches and seizures beyond routine border inspections require reasonable suspicion was established in *United States v. Montoya de Hernandez*, 473 U.S. 531 (1985), which held a sixteen-hour detention constitutional only because border officials had reasonable suspicion of alimentary

5

canal smuggling. *Id*. at 541-43. That prolonged detention in itself required reasonable suspicion demonstrates that more than body cavity and strip searches fall outside the category of "routine" border searches. *Accord United States v. Soto-Teran*, 44 F. Supp.2d 185, 191 (E.D.N.Y. 1996) (although CBP has broad authority to inspect packages, including envelopes, reasonable suspicion is required to read and photocopy non-contraband documents based on privacy interests). Under the government's view, CBP has authority to detain citizens indefinitely without reasonable suspicion, as long as they do not perform any kind of physically invasive search.

The government's argument also mischaracterizes plaintiffs' position as relying on the reasons for the stops to prove that they are not routine. *See* Defs.' Mem. at 4-5. Rather, as fully articulated in plaintiffs' memorandum, it is both the intrusiveness of a search and its relationship to the legitimate privacy interests of the citizen that determine whether reasonable suspicion is required. Although no court has expressly defined the line that separates "routine" from "non-routine," relevant precedent demonstrates that "routine" searches and seizures are the kind of minimally invasive encounters United States citizens would reasonably expect when crossing the border. *See* Plaintiffs Mem. at 20-21.[3]

---

[3] The government relies heavily on precedent that simply does not support its cause. *United States v. Flores-Montano*, 541 U.S. 149 (2004), and *United States v. Ramsey*, 431 U.S. 606 (1977), deal with simple property searches far less invasive and offensive than the personal searches alleged here. *Flores-Montano* holds that property searches – particularly, searches of a vehicle gas tanks – are *per se* reasonable at the border, as long as they do not cause "serious damage to, or destruction of, the property." 541 U.S. at 153. The Court specifically limited its reasoning to searches that impact only property, and do not impact any "dignity and privacy interests." *Id.* Similarly, *Ramsey* dealt only with property in the form of international mail. 431 U.S. at 607. Thus, these cases do not provide guidance in determining whether the action here, which went far beyond property searches and plainly implicated plaintiffs' dignity and privacy, are reasonable. Furthermore, given the far more extreme facts of this case, authority upholding suspicionless standard secondary examinations and simple pat-down searches are beside the point. *See* Defs.'s Mem. at 7-8 (*citing United States v. Charleus*, 871 F.2d 265 (2d Cir. 1989);

6

Defendants' focus on fingerprinting only emphasizes the unreasonable nature of the examinations here. As the excerpts chosen by the government from plaintiffs' testimony demonstrate, CBP officials applied force to obtain plaintiffs' fingerprints over their objections and without their consent. *See* Defs.' Mem. at 12-14; *see also* Elshinawy Decl. ¶ 17; Tabbaa Decl. ¶ 22; Rizek Decl. ¶ 18; Shibly Decl. ¶¶ 19-20.[4] This is also true of some of plaintiffs' pat-down searches. *Id.* The use of force is inconsistent with a routine, suspicionless border inspection. *See, e.g., United States v. Vega-Barvo*, 729 F.2d 1341, 1346 (11th Cir. 1984) (citing use of force as a factor in finding a border search non-routine).

Moreover, the Supreme Court established in *Hayes v. Florida*, 470 U.S. 811, 817 (1985), and *Davis v. Mississippi*, 394 U.S. 721 (1969), that detention for purposes of fingerprinting requires, at a minimum, reasonable suspicion.[5] *See also United States v. Flores-Sandoval*, 422 F.3d 711, 712, 714-15 (8th Cir. 2005) (detention of an alien for purposes of taking fingerprints improper absent any demonstrable basis to suspect illegal status). Plaintiffs were detained in order to retrieve their fingerprints and photographs for purposes of a law enforcement

---

*United States v. Jerome-Oboh*, 883 F. Supp. 917 (W.D.N.Y. 1995); *Bradley v. United States*, 299 F.3d 197 (3d Cir. 2002)).

[4]Indeed, read in full context, even these short excerpts of Plaintiffs' depositions clearly establish that they were compelled, by force and without consent, to provide their fingerprints and photographs to the government. *See* Elshinawy Depo. at 26:6-26:16; Shibly Depo. at 37:23-38:17; Tabbaa Depo. at 58:13-61:16 (all excerpts attached to Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction as Defendants' Appendix of Deposition Excerpts).

[5]Defendants' citation to the unpublished decision *United States v. Kaczmarak*, 2003 WL 1890022 (4th Cir. Apr. 17, 2003), is unavailing. That case upheld fingerprinting an alien *after* border officers determined that he attempted to enter the country illegally. Here, border officers had no reason to suspect plaintiffs, who are citizens, of unlawful action, and defendants argue that no suspicion is required before it may fingerprint and photograph citizens.

investigation. That fingerprinting, taken in isolation, might be a "'less serious intrusion upon personal security' than other types of searches," *see* Defs.' Mem. at 11 (quoting *Davis*, 394 U.S. at 727), simply misses the point. Plaintiffs here were processed as terrorism suspects, subject to detention for hours, interrogated about their religious activity and association, and forcibly searched, fingerprinted and photographed, all without reasonable suspicion. This package of intrusion is far afield from a routine border inspection, and the government should be required to demonstrate reasonable suspicion before it may subject citizens to this treatment.[6]

## IV. THE PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR APA CLAIM.

Defendants' rhetoric cannot obscure this truth: The government has failed to identify a law granting it power to detain persons whose U.S. citizenship is not in doubt and about whom there is no reasonable suspicion of criminal activity when that detention is unrelated to a customs search for dutiable goods or contraband.[7] The Court may read the many statutes cited by the government in vain without locating such authority. *See* Defs.' Mem. at 23 (citing 19 U.S.C. § 482, 1467 & 6 U.S.C. § 111(b)(1)(A)); Defendant's Memorandum in Support of Motion for Summary Judgment at 23-24 (citing further 19 U.S.C. § 1455, 1461, 1581); Defs.' Responses to First Interrogatories

---

[6] Defendants' suggestion that a minor change in its fingerprinting policy renders plaintiffs' request for a preliminary injunction moot is legally incorrect. *See Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 189-94 (2000) (internal quotations omitted).

[7] Plaintiffs have never disputed that CBP may conduct immigration inspections to verify citizenship. *See* 8 U.S.C. § 1225(b); 8 C.F.R. § 235.1(b). Nor have plaintiffs contested that CBP may detain an individual at the border based on a reasonable suspicion of criminal activity, pursuant to statutory authority also not invoked by Defendants in this litigation. *See* 19 U.S.C. § 1589a; 8 U.S.C. § 1357(a)(5); N.Y. Crim. Pro. Law § 140.30(1). Such authority would certainly justify detention of the individual convicted in the "Millenium Plot," *see* Jacksta Dec. ¶ 11.

(citing further 19 U.S.C. § 1499, 1559, 1582) (attached to Stoughton Declaration (11/9/05) as Ex.13).[8] In addition, conduct that contravenes the First or Fourth Amendment, *see supra* Parts I, III, necessarily exceeds statutory authority and violates the APA.

Undoubtedly, CBP may lawfully refer persons to secondary inspection and search persons, vehicles, and baggage for contraband or dutiable goods. But in this litigation CBP has never claimed that plaintiffs' detentions for up to six hours resulted from the time reasonably required to perform such as search of plaintiffs. Nor has the government argued that the detentions resulted from *bona fide* concerns about plaintiffs' citizenship or reasonable suspicion of criminal activity. CBP's position is clear: "The fact that the searches here resulted from an IDSO or concerns about terrorism did not require any particular suspicion for the actions taken." Defs.' Mem. at 7 (discussing Fourth Amendment claim). That is not so. Detention without "any particular suspicion," and unrelated to verification of citizenship or a search for contraband and dutiable goods, is *ultra vires*. CBP's statutory authority is great. But when there is no question of citizenship and the search for contraband or dutiable goods is finished, CBP inspectors are merely policemen standing at the border. They may detain only on reasonable suspicion and arrest only for probable cause. No statute provides otherwise.

---

[8] The Homeland Security Act provision cited by CBP confers no authority whatsoever. Govt. PI Br. at 22 (citing 6 U.S.C. § 111(b)(1)(A)). That measure establishes that a "primary mission" of DHS "is to (A) prevent terrorist attacks within the United States . . .." 6 U.S.C. § 111(b); *cf.* id. § 202(1). The very same provision, in a portion ignored by Defendants, further states that the "primary mission" of DHS is also to "**(G) ensure that the civil rights and civil liberties of persons are not diminished by efforts, activities, and programs aimed at securing the homeland.**" Id. § 111(b)(1).

9

# V. THE NARROW INJUNCTION SOUGHT BY PLAINTIFFS WILL NOT IMPERIL NATIONAL SECURITY.

Finally, the government argues that, no matter the merits of plaintiffs' claims, this Court should not grant a preliminary injunction in light of the "national security of the United States," Defs.' Mem. at 22, and because to do so would be "unworkable," *id*. at 24.

The suggestion that the narrow interim relief plaintiffs seek imperils national security is inexplicable. The government concedes plaintiffs are law-abiding citizens about whom it has no suspicion of wrongdoing. The relief plaintiffs seek would simply allow them not to be treated as terrorists for attending the 2005 RIS Conference when the government's justification is nothing more than a concern that people associated with terrorism might be attending the conference.

Nothing about this relief would affect the government's ability to subject plaintiffs (or anyone else) to all the normal lawful procedures it deploys at the border. Nor would it bar subjecting plaintiffs to the extraordinary procedures to which they were subjected last year if the government develops more specific information about the plaintiffs. What the injunction would do is bar the government from treating these American citizens as terrorists as part of an indiscriminate dragnet of people engaged in lawful First Amendment activity. This the Constitution prohibits.

As for an injunction being workable, the government acknowledges that it has in place a procedure for dealing with special circumstances. *See* Defs.' Mem. at 23 (noting exemption for accredited diplomats). Plaintiffs are confident the government could devise a procedure for allowing these three plaintiffs to return from the RIS Conference subject to the narrow injunction they seek.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION, by

__/s Christopher Dunn_____
CHRISTOPHER DUNN
COREY STOUGHTON
UDI OFER
ARTHUR EISENBERG
125 Broad Street, 17th Floor
New York, N.Y. 10004
(212) 344-3005

CATHERINE KIM
American Civil Liberties Union Foundation
125 Broad Street, 17th Floor
New York, N.Y. 10004
(212) 549-2500

ARSALAN IFTIKHAR
KHURRUM WAHID
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, D.C. 20003
(202) 488-8787

MICHAEL WISHNIE
245 Sullivan Street, 5th Floor
New York, N.Y. 10012
(212) 988-6430
NYCLU Cooperating Attorney

DAVID JAY
69 Delaware Avenue
Suite 1103
Buffalo, N.Y. 14202
(716) 856-6300

Dated: December 13, 2005
      New York, N.Y.

On the brief:	Daniel Freeman, Law student intern
Murad Hussain, Law student intern
Rizwan Sabar, Law student intern
Allard K. Lowenstein International Human Rights Clinic,
    National Litigation Project, Yale Law School

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 13, 2005, I caused to be served by email and United States First Class Mail the attached Plaintiffs' Reply to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction on the following counsel of record:

      Anthony J. Coppolino
      Special Litigation Counsel
      United States Department of Justice
      Civil Division, Federal Programs Branch
      Room 6102
      20 Massachusetts Ave NW
      Washington DC 20530

      Mary K. Roach
      Assistant United States Attorney
      United States Attorney's Office
      Western District of Buffalo
      138 Delaware Avenue
      Buffalo, New York 14202


      __/s Corey Stoughton_____
      COREY STOUGHTON